**ENGEL INDUSTRIES, INC.,**
Plaintiff–Appellee,

v.

**The LOCKFORMER COMPANY, Iowa Precision Industries, Inc. and Met–Coil Systems Corporation, Defendants–Appellants.**

No. 90–1482.

United States Court of Appeals,
Federal Circuit.

Oct. 8, 1991.

Rehearing Denied Nov. 13, 1991.

John K. Roedel, Jr., Senniger, Powers, Leavitt & Roedel, St. Louis, Mo., argued for plaintiff-appellee. With him on the brief was Kurt F. James. Also on the brief was Jerome A. Gross, Jerome A. Gross & Associates, St. Louis, Mo., of counsel.

Clarence J. Fleming, Jones, Day, Reavis & Pogue, Chicago, Ill., argued for defendants-appellants. With him on the brief was Sandra B. Weiss.

Before NEWMAN, MICHEL, and PLAGER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

The defendants in this declaratory judgment action, Met–Coil Systems Corporation and its subsidiaries The Lockformer Company and Iowa Precision Industries, appeal the decision of the United States District Court for the Eastern District of Missouri.[1] The court held all the claims of United States Patent No. 4,466,641 (the '641 patent) invalid for the patentee's failure to disclose the best mode as required by 35 U.S.C. § 112. The court also held that the patentee committed inequitable conduct based on failure to disclose the best mode, and voided the agreement whereby Engel Industries, the declaratory judgment plaintiff, had been licensed under the '641 patent. The district court also held that the '641 patent had not been proved invalid under 35 U.S.C. § 103.

We reverse the rulings of invalidity and inequitable conduct. No cross-appeal was taken from the ruling that the patent was not invalid because of obviousness.

## Background

The Lockformer Company is a manufacturer of roll-forming machines that form segments of ducts that distribute air throughout a building; Iowa Precision Industries manufactures equipment for this industry. Duct segments are made on roll-forming machines at or near the construction site, and are connected before or during installation. According to the record, before the invention described in the '641 patent these connections required rivets or spot welds, procedures that were time consuming and labor intensive.

In 1981 Howard McElroy, an engineer employed by Iowa Precision, began work on improving the connection of duct sections. His goal was to enable duct sections to be connected on site in a simple manner. Mr. McElroy asked The Lockformer Company to quote the price of a roll-forming machine that would form duct segments having a particular form of integral flange that McElroy then had in mind. Growing out of this exchange, Lockformer and Iowa Precision, which were not then sister companies, decided to collaborate on this problem. Early in this collaboration two meetings were held, those present including McElroy, Robert Heilman (Lockformer's vice president of engineering), and Leo R. Gale (Lockformer's executive vice president and director of sales). These meetings were held on December 2, 1981 and January 29, 1982, and are pertinent to the issue of best mode, as we shall discuss.

Flowing from this collaboration Messrs. Heilman and McElroy developed, as joint inventors, the system described and claimed in the '641 patent. In this system the duct sections are formed with an integral flange configured so as to engage corner connectors in such a way that the

---

1. *Engel Industries, Inc. v. The Lockformer Company*, No. 86–212–C–(4) (E.D.Mo. July 13, 1990).

connectors are simply snapped into place. This snap-fit made unnecessary the previously used rivets and other labor-intensive connection methods. The ducts (10) with corner connectors (34) are illustrated in Fig. 1 of the patent:

Patent claims 1–6 and 13–19 are apparatus claims, and claims 7–12 and 20–25 are method claims. Claim 1 is representative of the apparatus claims:

1. In a system for connecting the ends of sheet metal ducts wherein a frame is provided for each duct end, corner connectors defining perpendicularly extending arms are associated with the frames, and means are provided to interconnect the frames of adjacent duct ends,

the improvement wherein the sheet metal used for the ducts is also employed for forming said frames,

each said frame specifically comprising a roll-formed section consisting of an integral part of a duct wall,

each said section comprising a first portion extending perpendicularly out-wardly from a duct wall, and a second portion bent rearwardly into a position opposite an end portion of the duct wall, the distance between said second portion and said end portion substantially corresponding to the width of an arm of a corner connector, the side edges of each such arm being received in engagement with the respective surfaces of a second portion and end portion whereby the corner connectors are held in position relative to a frame,

and including retainer means defined by said second portion for receiving a side edge of an arm for thereby securely holding the arm in position.

Claim 7 is a typical method claim:

7. In a method for connecting the ends of sheet metal ducts wherein a frame is

provided for each duct end, corner connectors defining perpendicularly extending arms are associated with the frames, and means are provided to interconnect the frames of adjacent duct ends,

the improvement comprising the steps of forming each said frame by roll-forming a section of the duct whereby the frame comprises an integral part of the sheet metal duct,

each said roll-formed section comprising a first portion extending perpendicularly outwardly from a duct wall, and a second portion bent rearwardly into a position opposite an end portion of the duct wall, the distance between said second portion and said end portion substantially corresponding to the width of an arm of a corner connector,

forming a retainer means in said second portion, introducing the arms of the corner connectors between respective second portions and end portions whereby the side edges of each such arm are received in engagement with the respective surfaces of a said second portion and end portion to hold the corner connectors in position relative to a frame, said retainer means assisting in the holding by said second portion,

and thereafter fastening the respective connectors together to provide an assembly.

Engel Industries, a manufacturer of roll-forming machines, was a licensee under the '641 patent. Engel brought a declaratory judgment action against Lockformer, Iowa Precision, and their parent company Met–Coil (collectively "Met–Coil"), seeking a declaration of invalidity and non-infringement, and refund of royalties paid.

### Best Mode—35 U.S.C. § 112

■ The district court found that crimping the corner connectors after they are snapped onto the ducts is the best mode of carrying out the '641 invention, and that this was not disclosed in the '641 patent. The district court did not address particular claims or distinguish between apparatus and method, but held all the claims invalid on this ground.

35 U.S.C. § 112, ¶ 1, requires:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Patent invalidity for failure to set forth the best mode requires that (1) the inventors knew of a better mode of carrying out the claimed invention than they disclosed in the specification, and (2) the inventors concealed that better mode. *Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 927–28, 16 USPQ2d 1033, 1036–37 (Fed.Cir.1990). Failure of compliance must be proved by clear and convincing evidence. *See Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1517, 220 USPQ 929, 939–40 (Fed. Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150, 224 USPQ 520 (1984). Determination of whether the best mode requirement has been met is a question of fact, *Spectra–Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1535–36, 3 USPQ2d 1737, 1745 (Fed.Cir.), *cert. denied*, 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987) (compliance with the best mode requirement depends on the applicant's state of mind and is a question of fact), and the trial court's finding will not be disturbed unless it is clearly in error. Each claim must be considered individually for compliance with the best mode requirement. *See, e.g., Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 940, 15 USPQ2d 1321, 1328 (Fed.Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 296, 112 L.Ed.2d 250 (1990).

The best mode inquiry is directed to what the applicant regards as the invention, which in turn is measured by the claims. Unclaimed subject matter is not subject to the disclosure requirements of § 112; the reasons are pragmatic: the disclosure would be boundless, and the pitfalls endless. *See Randomex, Inc. v. Scopus*

*Corp.*, 849 F.2d 585, 588, 7 USPQ2d 1050, 1053 (Fed.Cir.1988) ("It is concealment of the best mode of practicing the *claimed invention* that section 112 ¶ 1 is designed to prohibit") (emphasis in original). It has been explained that a patent disclosure is not a "production specification", *In re Gay*, 309 F.2d 769, 774, 50 CCPA 725, 135 USPQ 311, 316 (1962), and that technical details apparent to a person of ordinary skill need not be included in the patent specification. *See W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1556–57, 220 USPQ 303, 316 (Fed.Cir.1983), *cert. denied*, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). *See also Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384–85, 231 USPQ 81, 94 (Fed.Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987) (absence of detailed disclosure of best mode for screening or producing monoclonal antibodies, known in the art, did not constitute proof of concealment); *In re Sherwood*, 613 F.2d 809, 816–17, 204 USPQ 537, 544 (CCPA 1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1694, 68 L.Ed.2d 193, 210 USPQ 776 (1981) (disclosure adequate where it "delineates the best mode in a manner sufficient to require only the application of routine skill"); *In re Karnofsky*, 390 F.2d 994, 997, 55 CCPA 940, 156 USPQ 682, 685 (1968) (failure to include operating conditions known in the art cannot rise to rejection under enabling or best mode requirements of § 112). This outline of precedent illustrates the fact-dependency of the question, and reinforces the need to establish the element of concealment of the inventor's preferred mode before claims may be invalidated on the best mode ground:

> [I]n order to find that the best mode requirement is not satisfied, it must be shown that the applicant knew of and concealed a better mode than he disclosed.

*Hybritech*, 802 F.2d at 1384–85, 231 USPQ at 94.

■ The district court found that the inventors did not disclose that the corners should be crimped to hold them securely in place. The court found that the inventors "knew that crimping might be necessary" at the time the patent application was filed. In evidence was a memorandum written by Leo R. Gale of Lockformer, dated February 3, 1982 and reporting on the December 2, 1981 and January 29, 1982 meetings. The Gale memorandum, of which copies had been distributed to McElroy and Heilman, included the statement:

> 12. A closing tool may be required to install corner and clinch bend form to retain corner.

Gale testified at trial about this statement:

> Q  Had any testing been done at that time?
>
> A  No, none whatsoever. It was a supposition as an engineer, which I am.
>
> Q  Then is—are you telling me that it was some time in '83 when people in the Lockformer organizations first started to give attention to doing some actual crimping, then?
>
> A  To my knowledge.

The evidence was generally undisputed that the inventors' concept, and their preferred mode, was to snap in the corners without the need for any other fastening step, and to avoid the rivets or other procedures that were previously needed. Gale testified: "The machines properly set up will hold the corners very nicely. In fact, manually they are practically impossible to take out." While the fact was disputed of how tightly the corners held without crimping, that was not the issue. Gale's suggestion at or after a conference with the inventors that crimping "may be required" is not clear and convincing evidence of either (1) the inventors' belief that crimping was the preferred mode of carrying out the claimed invention, or (2) concealment of the preferred mode.

There was testimony that after the system was commercialized problems arose in the handling and transportation to the job site of duct sections to which corners had been connected, and that crimping of the corners avoided these problems. The first customer to purchase the Met–Coil roll-forming machine testified:

> by handling [the duct section] and putting it on a truck and letting it drive 20, 30 miles to a project, vibrations—this

sort of thing—the corners would eventually work out. So we could send the corners loose. We started doing that; having them put—put them in the field, and we didn't have to crimp them. But we did different times crimp them in the shop if it was close by.

There was testimony that Met–Coil's customers' practical experience was that about twenty percent of the corners, if the corners were attached before transportation to the job site, separated during transport or rough handling. In printed instructions issued in 1983, some nine months after the '641 patent application was filed, Lockformer showed a crimping step, and sold tools for this purpose. The unrebutted evidence shows, however, that this step or precaution was not part of the claimed invention, but was taken to facilitate transport and handling. Disclosure was not required by § 112; just as there is no requirement, for example, to disclose the preferred packing material in which to ship the invention. The district court found that crimping is "necessary", "essential", and "very important". These findings do not relate to the time the patent application was filed, and are clearly erroneous with respect to the claimed invention.

Compliance with the best mode requirement of § 112 is governed by the inventors' state of mind with respect to the invention that is described and claimed in the patent application. There was no evidence that the inventors believed at the time of filing their patent application that crimping was the preferred mode of carrying out the claimed invention. The undisputed evidence shows that, at the time of application, their preferred mode was simply to snap in the corners without crimping.

The district court did not find concealment; nor does any evidence support such a finding. The inclusion in Lockformer's sales literature of the crimping step after the benefit in handling and transportation was manifest also weighs against concealment. Since neither knowledge that there was a better mode, nor concealment of that mode, was established, the holding of invalidity for failure to comply with the best mode requirement is clearly in error, and must be reversed.

*Enablement*

Engel states, as an alternative ground for upholding the judgment of invalidity, that "the failure to disclose crimping renders the Met–Coil patent invalid for lack of enablement". Engel argues that since the corners are not securely held unless crimped, the claimed invention is not enabled.

The enablement requirement is separate from that of the best mode, and must be separately met. *Chemcast*, 913 F.2d at 926, 16 USPQ2d at 1035. The enablement requirement is met if the description enables any mode of making and using the claimed invention. *See id.* at 929, 16 USPQ2d at 1037 (contrasting the best mode and enablement requirements). It was not shown that the '641 invention as claimed was not enabled by the description in the specification, and the district court did not so find. Invalidity can not be sustained on this ground.

*Inequitable Conduct*

A

A holding of inequitable conduct requires, *inter alia*, proof of intent to deceive or mislead, *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir. 1988) (*en banc*), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989), and does not flow simply from failure to meet the requirements of patentability. Culpable conduct is required, such as intentional concealment of the best mode under the mask of a fictitious mode, as in *Consolidated Aluminum Corp. v. Foseco Int'l, Ltd.*, 910 F.2d 804, 809, 15 USPQ2d 1481, 1484 (Fed.Cir.1990). No finding of culpable conduct was here made or could be supported by the evidence.

In view of our holding that the best mode requirement was not violated, the holding of inequitable conduct based thereon must be reversed.

B

Engel asserts non-disclosure of material prior art as an alternative ground for

sustaining the holding of inequitable conduct. The DW/141 reference was the subject of a request for reexamination filed by Met–Coil in 1987, after Engel challenged validity of the '641 patent on the ground that the DW/141 reference was invalidating prior art under § 103. The patent examiner rejected the request for reexamination, holding that:

> The DW/141 publication is merely cumulative to similar prior art already fully considered in previous examination of the claims.

When a reference is cumulative to other prior art that was before the examiner, the element of materiality is not established, and inequitable conduct can not lie.

### C

As an additional alternative ground for affirming the holding of inequitable conduct, Engel argues that Met–Coil should have disclosed to the Patent and Trademark Office the need for crimping during prosecution of the '641 patent application, or at least with the request for reexamination. Engel argues that this disclosure was required even if Met–Coil did not learn of the advantages of crimping until after the patent application was filed. This position is contrary to law, for disclosure is closed when the patent application is filed. There is no opportunity for an inventor to include subsequent improvements or modifications in an application or patent after filing. *See* 35 U.S.C. § 132 (prohibiting addition of "new matter"). Thus there can be no obligation to do so, and no penalty for failure to do so.

### *Post–Argument Motions*

The motions to consider additional portions of the trial record are granted.

### *Costs*

Costs are taxed in favor of Met–Coil. REVERSED.