**AMERICAN BANK NOTE
HOLOGRAPHICS,
INC., Plaintiff,**

v.

**The UPPER DECK COMPANY,
Defendant.**

**No. 92 Civ. 9146 (JGK).**

United States District Court,
S.D. New York.

Aug. 8, 1996.

Kevin McMahon, Kenneth R. Parks, Weil, Gotshal & Manges, New York City, Robert A. Meister, Piper & Marbury, L.L.P., New York City, for plaintiff.

Thomas G. Watkins, III, Cahill, Sutton & Thomas, Phoenix, Arizona, Marvin N. Gordon, Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, for defendant.

### OPINION AND ORDER

KOELTL, District Judge: [1]

This is a patent infringement action brought by American Bank Note Holographics, Inc., ("ABN"), against The Upper Deck Co., ("Upper Deck") based on two patents relating to certain hologram embossing techniques. ABN is the assignee for both patents, No. 4,728,377 (the "'377 Patent"), and No. 4,913,504 (the "'504 Patent"). In its First Amended Complaint, ABN only asserts claims under the '377 patent. Upper Deck asserts a counterclaim for a declaratory judgment on the issue of invalidity of both the '377 and '504 patents. Upper Deck now moves for summary judgment on two grounds. First, Upper Deck argues that the patents are invalid under 35 U.S.C. § 112 because of the alleged failure by the inventor, Terence J. Gallagher, to disclose the best mode of carrying out the invention in the patent specification. Second, Upper Deck argues that the patents are invalid under § 112 for lack of enabling disclosure, specifically that the patent specifications differ from the patent claims in their disclosure of the layer structure of the embossing material. ABN resists the motion on both grounds and argues that it is entitled to partial summary judgment on the issues raised by Upper Deck. ABN has not formally moved for summary judgment, however, and has not filed a Rule 3(g) statement or a notice of motion. Instead, ABN relies on authority that permits a court to grant summary judgment *sua sponte* against a party moving for summary judgment.

1. This opinion was delivered from the bench at a hearing held on August 2, 1996.

For the reasons that follow, Upper Deck's motion is denied with respect to both grounds, and ABN's suggestion that it be granted partial summary judgment is also denied.

## I.

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576–77 (Fed.Cir.1989). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994); *see Johnston*, 885 F.2d at 1576–77 (summary judgment is "appropriate in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law").

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1274 (Fed.Cir. 1995).

If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994). In a patent case on the issue of validity, the burden of proof at trial must be considered. *National Presto Indus., Inc. v. The West Bend Co.*, 76 F.3d 1185, 1189 (Fed. Cir.1996). In this case, the parties agree that the burden of proof for establishing patent invalidity based on noncompliance with the best mode requirement is clear and convincing evidence. *See Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 560 (Fed.Cir.1994) (citing *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1578 (Fed.Cir.1991)).

## II.

Upper Deck's first argument is based on the concept of best mode. The best mode requirement is set forth in 35 U.S.C. § 112 para. 1, which provides:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

To establish the invalidity of the '377 and '504 patents for failure to comply with the best mode requirement of § 112, Upper Deck must satisfy a two-part test. First, Upper Deck must prove that at the time the patent application was filed the inventor had a best mode of practicing the claimed invention. *See United States Gypsum Co. v. National Gypsum Co.*, 74 F.3d

1209, 1212 (Fed.Cir.1996); *Engel Indus., Inc. v. The Lockformer Co.*, 946 F.2d 1528, 1531 (Fed.Cir.1991). "This inquiry is wholly subjective and addresses whether the inventor must disclose any facts in addition to those sufficient for enablement." *U.S. Gypsum*, 74 F.3d at 1212. Second, Upper Deck must prove that the patent specification fails to disclose adequately what the inventor contemplated as the best mode from the perspective of a person having ordinary skill in the art. *Id.; Engel*, 946 F.2d at 1531; *Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 926–27 (Fed.Cir.1990). Whether the best mode requirement of § 112 has been met is a determination of fact. *U.S. Gypsum*, 74 F.3d at 1212; *Engel*, 946 F.2d at 1531.

Upper Deck argues that the inventor, Gallagher, had in mind two specific developments that were not disclosed in either the '377 or '504 patent. The first was the three-roller rotary embossing press originally acquired by ABN from Old Dominion Foils, ("Old Dominion"), in 1982. (Declaration of Terence J. Gallagher, dated Jan. 19, 1996, [Gallagher Decl. I], at ¶ 8.) The second was the hot stamping foil formulation designated X–5649 provided by Dri Print Foils ("Dri Print"), which Gallagher evidently found superior to other formulations for embossing holographic images. (Gallagher Decl. I, at ¶ 14.) Upper Deck contends that Gallagher contemplated both of these features as the best mode of carrying out his invention at the time he applied for his patents. Upper Deck argues that neither feature is disclosed in the patents and thus the patents are invalid for failure to comply with § 112.

### A.

■ With respect to the use of the rotary press, ABN argues that the use of that particular mechanism for producing the holographic images is not truly a part of the claimed invention and need not be disclosed as the best mode. Instead, the rotary press was simply one of the ways that the invention could be practiced. ABN concedes that the rotary press provided a low-cost, high-speed commercial embossing technique but argues

that the rotary press was a routine manufacturing choice that need not have been disclosed. Furthermore, ABN argues that even if such a disclosure were required under § 112, Gallagher did not in fact contemplate the use of the rotary press as the best mode of carrying out his invention. ABN relies on Gallagher's own testimony that he expected that other embossing machines could produce holograms of equal quality.

■ As ABN correctly observes, the best mode requirement of § 112 is directed at the "best mode of practicing the claimed invention." *U.S. Gypsum*, 74 F.3d at 1212; *see Chemcast*, 913 F.2d at 927–28 ("[B]oth the level of skill in the art and the scope of the claimed invention [are] additional, objective metes and bounds of a best mode disclosure."). In this vein, "the particulars of making a prototype or even a commercial embodiment do not necessarily equate with the 'best mode' of 'carrying out' an invention." *Wahl Instruments, Inc. v. Acvious, Inc.*, 950 F.2d 1575, 1579 (Fed.Cir.1991). To determine whether failure to disclose a particular manufacturing method constitutes a best mode violation, several factors should be considered:

> One must look at the scope of the invention, the skill in the art, the evidence as to the inventor's belief, and all of the circumstances in order to evaluate whether the inventor's failure to disclose particulars of manufacture gives rise to an inference that he concealed information which one of ordinary skill in the art would not know.

*Id.*, 950 F.2d at 1580; *see Engel*, 946 F.2d at 1531–32. Where a particular method of production is no more than a "routine manufacturing choice," *Wahl Instruments*, 950 F.2d at 1579–80, or a "production specification," *Christianson v. Colt Indus. Operating Corp.*, 822 F.2d 1544, 1562 (Fed.Cir.1987), *vacated on other grounds*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *In re Gay*, 309 F.2d 769, 774 (C.C.P.A.1962), failure to disclose that method is not a best mode violation under § 112.

Under the circumstances of this case, Upper Deck has failed to demonstrate that the undisputed material facts prove by clear and convincing evidence that the use of the rota-

ry press was not a routine manufacturing choice. Upper Deck's argument rests on a mischaracterization of the patent and on controverted and disputed testimony from Gallagher himself.

The claims in the '377 patent itself are not directed to a mass production technique of producing holograms, and the scope of the best mode inquiry is measured by the claims. *Engel,* 946 F.2d at 1531 ("The best mode inquiry is directed to what the applicant regards as the invention, which in turn is measured by the claims."). For example, claim one is "[a] process for providing a hologram on a document or like supportive substrate having a surface," ('377 Patent, col. 5, cl. 1), and none of the successive steps described in that claim contemplate mass production of holograms. In fact, Upper Deck has pointed to no part of the patent itself that implicates mass production. Nor has Upper Deck come forward with any evidence that a person skilled in the art would make such an implication based on the patent.

Upper Deck does offer the testimony of the inventor in support of its characterization of the invention as a method of mass-producing holograms at high volume and low cost, citing the business requirements that Gallagher identified when he was working for ABN. (*See* Gallagher Decl. I, at ¶¶ 4, 7, 8.) Gallagher did testify that mass production was an objective of the invention, (*see* Gallagher Decl. I, at ¶¶ 18, 20), and that the use of the three-roller rotary embossing machine acquired from Old Dominion was "critical to ABN's successful holographic embossing of hot stamping foil as of [the] patent application filing date[.]" (Gallagher Decl. I, at ¶ 36.)

But Gallagher also explained that other specifications for the holograms motivated his invention, namely the small thickness of the hologram and the ease with which the hologram could be removed and transferred to a counterfeit document. (*See* Gallagher Decl. I, ¶¶ 10, 11.) In a declaration submitted by ABN, Gallagher testified that his invention "was addressed to the problem of producing a very thin hologram ... that could be affixed to a document or other substrate in such a way that it could not be removed without being destroyed." (Declaration of Terence J. Gallagher, dated Feb. 19, 1996, [Gallagher Decl. II], at ¶ 4.) Gallagher also explained that the use of the three-roller rotary embossing press was related to mass producing the holograms, (*see* Gallagher Decl. II, at ¶ 4) but he did not consider it part of his invention and was aware of other embossing techniques that would produce holograms of equal quality albeit not as quickly. (*See* Gallagher Decl. II, at ¶¶ 5, 8.) Upper Deck replies to ABN's argument with the submission of yet a third declaration from Gallagher in which he describes the considerable differences in production speed between the rotary press and other embossing techniques. (*See* Declaration of Terence J. Gallagher, dated Feb. 26, 1996 [Gallagher Decl. III].)

The testimony of the inventor, however, is not determinative of the claims themselves which, as explained above, do not concern mass production of holograms. Neither Gallagher's "admission" that the rotary press was the best method of producing holograms quickly and cost effectively, nor the fact that he used that method to develop his invention are undisputed evidence that he contemplated that the best mode of carrying out the claimed invention was in fact that method. *Wahl Instruments,* 950 F.2d at 1580–82. Indeed, this case is strikingly similar to *Wahl Instruments* where the Federal Circuit reversed a grant of summary judgment of invalidity on the ground of a best mode violation. In *Wahl Instruments* the claimed invention was a temperature-indicating device useful to time the cooking of eggs. The defendant argued that the patent failed to disclose the inventor's choice of a particular method of molding the two halves of the egg-timer together. Although the inventor in *Wahl Instruments* also admitted choosing that particular method because of cost and volume considerations, the court held that the admission did not establish a best mode violation *a fortiori. Wahl Instruments,* 950 F.2d at 1581.

There is no evidence that the use of the rotary press affects how the claimed invention works. Indeed, the undisputed evidence adduced for this motion demonstrates that

the other methods would work equally well. (*See* Deposition of Terence J. Gallagher, taken Nov. 21, 1995, at 255; *see also* Gallagher Decl. II ¶¶ 5, 8.) Upper Deck's insistence that the other methods were over two-hundred times slower is directed to the commercialization of a particular embodiment of the invention and not to the best mode of carrying out the claimed invention. And the fact that the rotary press was a superior commercialization of the invention is not clear and convincing proof that the use of the rotary press had to be disclosed in the patent. *See U.S. Gypsum*, 74 F.3d at 1213 ("Disclosure concerning the best mode of practicing an invention must be distinguished for best mode purposes from disclosure for optimum commercial production. The former is required; the latter is not."); *Wahl Instruments*, 950 F.2d at 1582 ("How to mass produce the device is not, however, a best mode of [the] invention or part of what [was] invented.").

In any event, even if mass production was a feature of the claimed invention, the dueling declarations by the inventor serve to illustrate the presence of genuine issues of material fact with respect to what was in the inventor's mind at the time he applied for his patents. Because the first part of the best mode inquiry is "wholly subjective" it cannot be decided as a matter of undisputed fact that Gallagher considered the use of the rotary press the best mode of carrying out his invention.

Upper Deck suggests several reasons why Gallagher would have concealed the use of the rotary press, including the company's secrecy policy and Gallagher's apparent ignorance about the legal requirement to disclose the best mode of carrying out his invention in the patent. To the extent these reasons are probative of Gallagher's state of mind, they are genuinely disputed by ABN which points to conflicting testimony from Gallagher himself. (*Compare, e.g.,* Gallagher Decl. I, at ¶ 41 *with* Gallagher Decl. II, at ¶ 6.) And, of course, the reasons why Gallagher did not mention the rotary press in the patent are not evidence that the rotary press was more than a routine manufacturing choice.

**B.**

■ With respect to the use of the specific hot stamping foil formulation designated X–5649, ABN argues that Gallagher did not contemplate the use of that particular formulation as the best mode. ABN points out that Gallagher had determined only that the X–5649 foil was feasible, (*see* Gallagher Dep. at 229; Gallagher Decl. II, at ¶ 12), and that Gallagher had made that determination about one week before he applied for his patents. (*See* Deposition of Alan Ginn, dated Feb. 23, 1994, at 19.) At that time, ABN maintains, Gallagher had not yet adequately assessed the foil's commercial practicality or reliability, and he continued to experiment with it for months afterwards. (*See* Gallagher Dep. at 229; Gallagher Decl. II, at ¶ 11.) Under these circumstances, ABN argues that there was no need to disclose the X–5649 hot stamping foil provided by Dri Print as the best mode of carrying out Gallagher's invention.

The crucial distinction that ABN focuses on is whether Gallagher believed the X–5649 foil was the best mode for producing embossed holographic images or whether that foil was superior because it satisfied Gallagher that his invention was feasible. The answer to this question determines whether Gallagher even contemplated a best mode for this aspect of his invention and will address the first prong of the best mode inquiry. But this is not a question that can be determined on this motion because there are genuine issues of material fact with respect to what Gallagher believed in terms of the "superiority" of the X–5649 hot stamping foil.

■ Under the first prong of the two-part best mode inquiry, the focus is on "the inventor's state of mind as of the time he filed his application—a subjective, factual question." *Chemcast*, 913 F.2d at 926. Indeed, it is not necessary that an inventor contemplate a best mode of carrying out the invention at all. *Automotive Prods. P.L.C. v. Tilton Eng'g, Inc.*, 855 F.Supp. 1101, ―― (C.D.Cal. 1994); *Mead Digital Sys., Inc. v. A.B. Dick Co.*, 521 F.Supp. 164, 181 (S.D.Ohio 1981), *aff'd*, 723 F.2d 455 (6th Cir.1983).

The only evidence presented by Upper Deck on the question of Gallagher's state of mind regarding the X–5649 hot stamping foil is Gallagher's own declaration and the declaration of Mark Woontner, a sales representative from Dri Print. Gallagher explained that he received four different samples of hot stamping foil from Dri Print and selected one as superior. He explained:

> Prior to my patent application filing date, I had identified one of these Dri Print hot stamping foil samples as superior to the others and had determined that this was the preferred foil that I would use in further testing.

(Gallagher Decl. I at ¶ 14.) Construing the reasonable inferences from this statement in ABN's favor as must be done on a motion for summary judgment, this statement does not support a finding that Gallagher contemplated the X–5649 foil as the best mode of carrying out his invention. First, Gallagher stated that the X–5649 foil was superior only in relation to the other three samples, and as Upper Deck explains, there were thousands of other Dri Print stamping foil formulations. Second, Gallagher referred explicitly to using the X–5649 foil for additional testing rather than as a best mode for producing the holograms. Consequently, the Gallagher declaration does not support Upper Deck's argument that Gallagher contemplated that the X–5649 hot stamping foil obtained from Dri Print was the best mode for carrying out his invention.

ABN points to additional evidence that Gallagher did not contemplate the X–5649 foil as a best mode. Gallagher testified at his deposition that at the time he applied for the patent: "[I was] a long way from a final product. In fact, that process of refinement went on for, I would say, a couple of years after that.... It was usable but obviously needed a lot of improvement." (Gallagher Dep. at 229.) Moreover, in the declaration submitted by ABN, Gallagher stated that all of the foils received from Dri Print "were capable of producing a hologram image.... The superior foil was not an optimum product, however, and needed further improvement." (Gallagher Decl. II at ¶ 11.) Indeed, in his third declaration, Gallagher reiterated that he filed his patent application just days after he "confirmed the viability of [his] invention" and that his "pre-filing date experiments had confirmed the operability of my invention...." (Gallagher Decl. III at ¶ 56.)

At the very least, after resolving all ambiguities and drawing all reasonable inferences in ABN's favor, the evidence from Gallagher himself presents a genuine issue of material fact with respect to whether he contemplated the Dri Print stamping foil that had "confirmed the viability" of his invention was a best mode of carrying it out.

Upper Deck also offers additional testimony from Dri Print's salesperson, Mark Woontner. That testimony by itself does not dispel the issues of fact arising from Gallagher's own testimony as they relate to the inventor's subjective state of mind. Moreover, ABN offers the testimony of Dri Print's chief chemist, Alan Ginn, who confirms that significant additional testing of the hot stamping foil was performed after the patent application was filed. (*See* Ginn Dep. at 92, 145.) This contrary view raises its own genuine issue of fact in connection with the best mode from the perspective of a person skilled in the art.

Accordingly, Upper Deck's motion for summary judgment on the basis of the invalidity of the patents for failure to comply with the best mode requirement of § 112 is denied. Similarly, the same genuine issues of material fact preclude summary judgment in ABN's favor on the issue of the validity of the patents on this basis.

### III.

Upper Deck's second argument in favor of summary judgment is based on invalidity of the '377 patent for lack of enabling disclosure pursuant to § 112.

Upper Deck argues that the written description of the layer structure disclosed in the patents and the language of the claims in the patents are irreconcilable and therefore the patents are invalid for failure to provide enabling disclosure under § 112. Upper Deck argues that according to claim number one the adhesive layer (designated # 14) is positioned *between* the transparent material

(designated # 7) and the metal coating (designated # 10), but according to the disclosure in the patent, including figure 8, the adhesive layer is positioned *on top of* the metal coating. Upper Deck arrives at this conclusion through its interpretation of the phrase "said exposed surface" in claim one of the patents. In paragraph (a) of claim one, the "exposed" surface refers to the transparent layer. In paragraph (b) that "said exposed surface" is covered with a metal coating. In paragraph (c) the adhesive material is applied to the "said exposed surface." Upper Deck argues that at step (c) the "said exposed surface" still refers to the transparent material which has now been covered with the metal coating. Upper Deck concludes that step (c) requires that the adhesive be applied *in between* the metal coating and the transparent layer so that it is applied to the "said exposed surface." Upper Deck compares that layer structure with the figures in the patent disclosures where the adhesive layer appears on top of the metal coating, a surface Upper Deck argues was never designated as the "said exposed surface" in the patent claims. Upper Deck argues that the inconsistency invalidates the patent.

Upper Deck has submitted no expert or other extrinsic evidence to substantiate its interpretation of the discrepancy between the patent disclosure and the patent claims. Therefore, the sole basis for its argument is the unadorned meaning of the "said exposed surface" language of patent claim one, paragraphs (a), (b), and (c).

ABN offers another interpretation of the meaning behind that phrase in the context of the patent as a whole, the patent specifications, and a further explanation of other terms appearing in the patent. ABN explains that the "said exposed surface" refers initially to the exposed surface of the transparent layer. When the adhesive layer is applied in step (c), however, the intervening step of vacuum depositing metal on the transparent layer has made the "said exposed surface" the metallized exposed surface of the transparent layer. ABN argues that its interpretation of the phrase "said exposed surface" is consistent with the patents' preamble which states that the claimed

process comprises the "successive steps" recited in the claim. ABN also points out that Upper Deck's construction of the claim—which would require that the adhesive layer be sandwiched between the transparent material and the metal coating—would make no sense to anyone skilled in the art of hot foil stamping and would be inconsistent with the patent as a whole.

In patent law, the interpretation of the meaning of claims is a question of law to be decided by the Court. *Markman v. Westview Instruments, Inc.,* —— U.S. ——, ——, 116 S.Ct. 1384, 1387, 134 L.Ed.2d 577 (1996). Three sources of information may be considered by the Court in making its interpretation: the claims themselves, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995), *aff'd,* —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The claims, of course, provide the controlling meaning of the patent, but the claims must be read in view of the specification and prosecution history. *Id.* Expert evidence may also be considered, including evidence of how a person skilled in the art would interpret the patent claims. *Id.* (quoting *Fonar Corp. v. Johnson & Johnson,* 821 F.2d 627, 631 (Fed.Cir.1987)). Expert evidence may be used by the court, in its discretion, to "ascertain the meaning of a technical or scientific term or term of art," *United States Indus. Chems., Inc. v. Carbide & Carbon Chems. Corp.,* 315 U.S. 668, 678, 62 S.Ct. 839, 844, 86 L.Ed. 1105 (1942); *Markman,* 52 F.3d at 980 (expert evidence may be "helpful to explain scientific principles, the meaning of technical terms, and terms of art that appear in the patent and prosecution history"), although, as with other extrinsic evidence such as the inventor's testimony and learned treatises, expert evidence may only be used "for the court's understanding of the patent, not for the purposes of varying or contradicting the terms of the claims." *Markman,* 52 F.3d at 981 (citing *U.S. Industrial Chemicals,* 315 U.S. at 678, 62 S.Ct. at 844); *see National Presto,* 76 F.3d at 1190 (Fed.Cir.1996) ("[W]e have been greatly aided in understanding these terms in the context in which they are used by consideration of the testimony of the expert witnesses....").

For the purposes of this motion, it is clear that Upper Deck's proffered interpretation runs afoul of the patent as a whole, the patent specification, and the canons of claim construction, all of which ABN cites in support of its opposition to the motion.

ABN is correct that Upper Deck ignores the reference in the patent's preamble to "successive steps," a reference that clarifies the meaning of the claim in the sense that after the metal coating is deposited on the transparent layer, the "said exposed surface" becomes the metallized surface. The patent's preamble may be considered to construe the claims. *See In re Paulsen*, 30 F.3d 1475, 1479 (Fed.Cir. 1994); *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed.Cir.1989).

Moreover, to read the patent claims in the way Upper Deck suggests would invalidate the patent notwithstanding ABN's reasonable alternative interpretation. To invalidate a patent on the basis of an interpretation in conflict with the patent specification, and wholly unsupported by expert testimony, is a result that would violate the normal canons of patent claim construction. *See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed.Cir.), *cert. denied*, 488 U.S. 986, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988) (claims are to be read in light of the specification); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867 (Fed.Cir. 1985) (terminology in patent claims should be interpreted from the standpoint of one of ordinary skill in the art); *Whittaker Corp. v. UNR Indus., Inc.*, 911 F.2d 709, 712 (Fed. Cir.1990) (claims should be construed to uphold their validity if possible).

Accordingly, Upper Deck's motion for summary judgment on the basis of the invalidity of the patent for failure to include enabling disclosure pursuant to § 112 is denied.

ABN invites the Court to grant summary judgment in its favor on this issue, even though ABN did not move for summary judgment. The Court declines to do so. Based on the arguments and evidence presented, Upper Deck has not demonstrated as a matter of law that the patent is invalid for failure to include enabling disclosure. Under *Markman*, the issue of claim construction is for the Court, and *Markman* itself was decided in the context of a motion for judgment following a jury verdict. The Court cannot foreclose at this point any evidence—including expert evidence—that may be developed in the course of the trial which may further inform the Court's view as to the legal construction of the claim. At this point, it is sufficient that Upper Deck's motion for summary judgment is denied.

### CONCLUSION

For the foregoing reasons, Upper Deck's motion for summary judgment is denied in its entirety. ABN's suggestion that the Court grant summary judgment in its favor *sua sponte* on the best mode and enablement issues is declined.

**SO ORDERED.**