**UNITED STATES GYPSUM COMPANY,**
Plaintiff–Appellant,

v.

**NATIONAL GYPSUM COMPANY,**
Defendant–Appellee.

No. 95–1254.

United States Court of Appeals,
Federal Circuit.

Jan. 11, 1996.

Rehearing Denied Feb. 27, 1996.

---

Donald E. Egan, Cook, Egan, McFarron & Manzo, Ltd., of Chicago, Illinois, argued for plaintiff-appellant. With him on the brief were Mark J. Murphy and John M. Lorenzen.

Allen H. Gerstein, Marshall, O'Toole, Gerstein, Murray & Borun, of Chicago, Illinois, argued for defendant-appellee. With him on the brief were Douglass C. Hochstetler and Anthony Nimmo.

Before LOURIE, CLEVENGER, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

United States Gypsum Company ("USG") appeals from the decision of the United States District Court for the Northern District of Illinois granting summary judgment of patent invalidity in favor of National Gypsum Company ("National").[1] Because the court did not err in granting summary judgment, we affirm.

## BACKGROUND

Joint compounds are adhesives used in the construction of building walls and ceilings to fill and coat the joints between adjacent gypsum wallboards. The patent in suit, U.S. Patent 4,454,267, assigned to USG, is directed to a lightweight joint compound.

In 1978, Terrance L. Williams, a USG employee, conceived the idea of making a lightweight joint compound containing silicone-treated expanded perlite.[2] He began his re-

---

1. *United States Gypsum Co. v. National Gypsum Co.*, No. 89 C 7533, 1994 WL 501994 (N.D.Ill. Sept. 9, 1994) (order granting summary judgment), *amended, United States Gypsum Co. v. National Gypsum Co.*, No. 89 C 7533, 1995 WL 66370 (N.D.Ill. Feb. 8, 1995) (order granting motion for amendment).

2. Perlite is a volcanic ore that contains water; when the ore is pulverized and heated it expands to form porous, lightweight particles known as expanded perlite. According to the '267 patent, treating expanded perlite with silicone renders the material water-insensitive. Col. 2, 11. 50–55.

search efforts by preparing a joint compound containing a silicone-treated expanded perlite which had been made by a fellow USG employee, Michael L. Bolind. The joint compound made with Bolind's perlite "worked satisfactorily"; however, it was somewhat heavier than desired and exhibited cracking when applied to a surface. In 1981, Williams experimented with a type of silicone-treated expanded perlite sold by Silbrico Corporation under the name Sil–32. However, Sil–32 perlite contained grit, which required screening to prevent "scratching" on the surface of a joint compound. Williams also investigated combinations of perlites with a lightweight filler known as Q–Cel microspheres. The resulting joint compounds had unacceptable properties.

A breakthrough in Williams' research efforts occurred in early 1982 when Silbrico Corporation sent Williams a sample of silicone-treated expanded perlite designated as Sil–42. Williams did not know the chemical composition of Sil–42 perlite or its method of manufacture because Silbrico viewed that information as proprietary. He discovered, however, that because Sil–42 perlite was made almost entirely (99%) of particles − 100 mesh in size or smaller, it did not have to be screened before use in a joint compound.[3] That was a major advantage over the Sil–32 perlite with which Williams had previously experimented. In addition, Williams found that Sil–42 perlite eliminated the coarse look of other lightweight fillers, resisted breakdown under vacuum treatment, and yielded a joint compound that was lightweight, easy to sand, and exhibited good non-cracking and adhesion properties. He tested various grades of Sil–42 perlites supplied to him by

Silbrico and ultimately selected a particular grade of the material.[4]

When it became apparent to USG that Williams had developed a lightweight joint compound having good application properties without the need to screen the perlite, USG decided to sell a joint compound containing Sil–42 perlite. Concurrently, USG's patent attorney began preparing a patent application covering the invention. He asked Williams to forward a description of his best formulation for inclusion in the application; all the formulations that Williams sent to the attorney listed Sil–42 perlite as a component. Sometime before the patent application was filed, however, a USG executive instructed the attorney to omit from the application any reference to Sil–42 or Silbrico Corporation. Subsequently, when the application was filed on December 20, 1982, it did not refer to Sil–42 either by chemical formula, method of manufacture, trade name, or supplier. The '267 patent issued in June 1984.[5]

USG sued National for infringement of the '267 patent. National denied the allegation of infringement and moved for summary judgment, arguing that the patent was invalid for failure to disclose the best mode of practicing the claimed invention. The district court determined, first, that there was no genuine dispute that Williams had a best mode of practicing the invention. In particular, the court determined that at the time the patent application was filed Williams preferred Sil–42 silicone-treated expanded perlite because it did not have to be screened before use and it improved the joint compound's quality and performance characteristics. The court further determined that

---

3. A fineness of 99% − 100 mesh meant that 99% of the particles would pass through a 100 mesh (150 micron) screen.

4. For purposes of this appeal, there were no meaningful differences between the various grades of Sil–42 perlites. Silbrico Corporation and USG also referred to the Sil–42 perlites as "USG–42." For simplicity we shall refer only to "Sil–42 perlite."

5. Claim 1 is representative of the claimed invention:

   1. A lightweight joint compound having properties suitable for use in finishing joints

between the edges of adjacent wallboards, said joint compound consisting essentially of:
   (1) a filler selected from the group consisting of calcium carbonate and calcium sulfate,
   (2) a non-leveling agent,
   (3) *expanded perlite which has been treated with a silicone compound to render it water-insensitive* present in an amount of from about 3.5% to about 25% based on the dry weight of said joint compound,
   (4) a thickener,
   (5) a binder, and
   (6) sufficient water to adjust the viscosity to render said joint compound suitable for use. [Emphasis added].

the '267 specification did not inform those of ordinary skill in the art how to make (or otherwise obtain) Sil–42 perlite, an essential component of Williams' preferred formulation. Accordingly, the court granted summary judgment that the patent was invalid for failure to satisfy the best mode requirement of 35 U.S.C. § 112 (1988). This appeal followed.

## DISCUSSION

■ Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576–77, 12 USPQ2d 1382, 1383 (Fed.Cir.1989). Thus, summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the nonmovant. *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1274, 35 USPQ2d 1035, 1038 (Fed.Cir.1995). We review a district court's grant of summary judgment *de novo*. *Conroy v. Reebok Int'l., Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994).

*Validity—Best Mode*

■ Patents are, by statute, presumed to be valid. 35 U.S.C. § 282 (1988). National thus has the burden of establishing by clear and convincing evidence that the '267 patent is invalid. *Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 560, 32 USPQ2d 1077, 1084 (Fed.Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1102, 130 L.Ed.2d 1069 (1995).

■ 35 U.S.C. § 112 ¶ 1 provides, in relevant part, that the specification "shall set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112. Determining whether a patent complies with the best mode requirement involves two underlying factual inquiries. First, it must be determined whether, at the time the patent application was filed, the inventor had a best mode of practicing the claimed invention. *Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 927–28, 16 USPQ2d 1033, 1036 (Fed.Cir.1990). This inquiry is wholly subjective and addresses whether the inventor must disclose any facts in addition to those sufficient for enablement. *Id.* at 928, 16 USPQ2d at 1036. Second, if the inventor had a best mode of practicing the claimed invention, it must be determined whether the specification adequately disclosed what the inventor contemplated as the best mode so that those having ordinary skill in the art could practice it. *Id.* at 928, 16 USPQ2d at 1036–37. The latter question "is largely an objective inquiry that depends upon the scope of the claimed invention and the level of skill in the art." *Id.* at 928, 16 USPQ2d at 1037.

■ On appeal, USG contends that Williams believed that any of three silicone-treated expanded perlites (Bolind's perlite, Sil–32, and Sil–42) would perform equally well in a joint compound and thus that Williams did not have a best mode of practicing the invention. National responds that the district court correctly concluded that there was no genuine dispute that Williams believed that Sil–42 perlite represented a substantially better material than the other silicone-treated expanded perlites with which he had experimented. We agree with National. National brought forward clear and convincing evidence that Williams believed that Sil–42 perlite was the best material for use in the invention. To begin with, Williams knew that Sil–42 perlite did not have to be screened before use in a joint compound and that this was a significant advantage over other silicone-treated expanded perlites. Moreover, the record shows that Williams believed that Sil–42 perlite eliminated the coarse look of other lightweight fillers, resisted breakdown under vacuum better than Sil–32, and yielded a lightweight joint compound having improved application properties.

Williams' testimony before the district court fully supported the court's conclusion that Williams had a best mode of practicing the claimed invention. Williams admitted,

during multiple depositions, that he considered Sil–42 perlite to be the best material for use in the invention. Similarly, he stated in an affidavit that "[a]t the time the application was filed, I considered a perlite supplied by Silbrico under the name Sil–42 or USG 42 to be the best commercially available perlite for use in the [claimed] lightweight joint compounds." His affidavit did not suggest, as USG contends, that Williams equally preferred Sil–32, Bolind's perlite, and Sil–42. On the contrary, the affidavit stated that "the joint compound made with [unscreened] Sil–32 was not acceptable." Likewise, the affidavit stated that Bolind's perlite yielded a joint compound that "worked satisfactorily"; it did not state that Bolind's perlite worked as well as Sil–42 perlite.

USG argues, alternatively, that Williams did prefer Sil–42 perlite, but only for purposes of developing a commercial product, and that Williams selected Sil–42 perlite only because it was available in large quantities. Thus, USG contends that Sil–42 perlite was not part of the best mode of practicing the claimed invention. In support, USG cites the following passage from *Wahl Instruments, Inc. v. Acvious, Inc.*, 950 F.2d 1575, 1581, 21 USPQ2d 1123, 1128 (Fed.Cir.1991):

> Any process of manufacture requires the selection of specific steps and materials over others. The best mode does not necessarily cover each of these selections. To so hold would turn a patent specification into a detailed production schedule, which is not its function. Moreover, a requirement for routine details to be disclosed because they were selected as the "best" for manufacturing or fabrication would lay a trap for patentees whenever a device has been made prior to filing for the patent. . . . A step or material or source or technique considered "best" in a manufacturing circumstance may have been selected for a non-"best mode" reason, such as the manufacturing equipment was on hand, certain materials were available, prior relationship with supplier was satisfactory, or other reasons having nothing to do with development of the invention.

We acknowledge this statement of the law. However, we cannot accept USG's argument because Williams' selection of Sil–42 perlite was not "a routine manufacturing choice" made "because of expected volume of production" or "reasons of cost." *Wahl Instruments*, 950 F.2d at 1581, 21 USPQ2d at 1128. Rather, it was not genuinely disputed that Williams selected Sil–42 perlite because it did not require screening and because it significantly improved the physical properties of the joint compound, not just because it was available in large quantities. In short, Williams believed that Sil–42 perlite was essential to improving the *invention;* the material was not selected as a matter of commercial expediency. Disclosure concerning the best mode of practicing an invention must be distinguished for best mode purposes from disclosure for optimum commercial production. The former is required; the latter is not. *Transco Prods.*, 38 F.3d at 560, 32 USPQ2d at 1084 ("[T]he best mode requirement does not require an inventor to disclose production details so long as the means to carry out the invention are disclosed."). Thus, we find no error in the court's determination that there was no genuine issue of material fact that Williams had a best mode of practicing the invention, namely, use of Sil–42 perlite in the claimed joint compound.

The question remains whether the '267 specification discloses Williams' best mode in a way that would enable those having ordinary skill in the art to practice it. "Assessing the *adequacy* of the disclosure, as opposed to its *necessity*, is largely an objective inquiry that depends upon the scope of the claimed invention and the level of skill in the art." *Chemcast Corp.*, 913 F.2d at 928, 16 USPQ2d at 1037. Applying this standard, the district court held that there was no genuine dispute that Williams did not disclose his best mode, because the '267 specification does not disclose the chemical composition of Sil–42 perlite, its method of manufacture, or supplier/trade name information.

■ We agree that there was no genuine dispute that the '267 patent specification does not disclose Williams' best mode. The specification does not provide a chemical description of Sil–42 perlite or its method of manufacture for the simple reason that neither

Williams nor anyone else at USG *knew* the chemical composition or method of manufacture of Sil–42 perlite, which were trade secrets of Silbrico Corporation. Williams cannot claim that he disclosed what he did not know. Thus, while the specification defines perlite as a rock that "generally contains 65–75% $SiO_2$, 10–20% $Al_2O_3$, 2–5% $H_2O$, and smaller amounts of soda, potash, and lime," col. 2, ll. 34–35, that is not a description of Sil–42 silicone-treated expanded perlite, which consists of a proprietary blend of perlite ores coated with an unknown silicone compound. The specification's use of the term "Silicone Treated Expanded Perlite" does not indicate the chemical composition of Sil–42 perlite. The specification also fails to mention Williams' preference that the particle distribution/size of the silicone-treated expanded perlite be 99% – 100 mesh. In addition, USG concedes that the specification only discloses a method of making *Bolind's perlite*, not Sil–42 perlite. Disclosing a non-preferred embodiment of the invention obviously does not satisfy the best mode requirement. That the composition and method of manufacture of Sil–42 perlite were trade secrets and thus were unknown to Williams does not excuse compliance with the best mode requirement. *See Chemcast Corp.*, 913 F.2d at 930, 16 USPQ2d at 1038 ("Whatever the scope of Reynosol's asserted trade secret, to the extent it includes information known by Rubright that he considered part of his preferred mode, section 112 requires that he divulge it.").

The specification also does not identify Sil–42 perlite by supplier or trade name. Of course, "supplier/trade name information must be provided only when a skilled artisan could not practice the best mode of the claimed invention absent this information."

*Transco Prods.*, 38 F.3d at 560, 32 USPQ2d at 1084. Here, because Williams did not know the composition or method of manufacture of Sil–42 perlite, he was required, at a minimum, to provide supplier/trade name information in order to satisfy the best mode requirement. *See Chemcast Corp.*, 913 F.2d at 929, 16 USPQ2d at 1038 ("Because Chemcast used only R–4467, because certain characteristics of the grommet material were claimed elements of the '879 invention, and because Rubright himself did not know the formula, composition, or method of manufacture of R–4467, section 112 obligated Rubright to disclose the specific supplier and trade name of his preferred material."). Without such information, those skilled in the art would remain ignorant of Williams' best mode of practicing the claimed invention. The '267 specification, however, omits this information.[6]

▪ USG contends, nonetheless, that those of ordinary skill in the art would have known how to obtain – 100 mesh silicone-treated expanded perlite because Sil–42 perlite was commercially available. The evidence indicates, however, that the material was *not* well-known in the art in December 1982. For instance, William Forte, a former manager in National's joint treatment group, testified that at the time of his retirement in 1983 he knew of no source of – 100 mesh perlite. USG brought forth no contrary evidence. Moreover, there were qualities of Sil–42 apart from its fineness that led Williams to consider it his best mode. Sil–42 perlite resisted breakdown under vacuum treatment and yielded a joint compound that was lightweight, easy to sand, and which exhibited good non-cracking and adhesion properties.

---

6. As a practical matter, however, even if the '267 specification had disclosed "Sil–42 perlite from Silbrico Corporation" the U.S. Patent and Trademark Office (PTO) may have required additional technical information. "Examiners often require that a *generic* description be inserted in place of, or in addition to, a trade name, on the basis that trade names may, over time, come to represent different things." *Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 559 n. 10, 32 USPQ2d 1077, 1084 n. 10 (Fed.Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1102, 130 L.Ed.2d 1069 (1995). The PTO permits a trade name to be used in a patent specification only if (1) the specification also contains a generic definition of the trade name, *i.e.*, one that is "sufficiently precise and definite to be made a part of a claim," or (2) the trade name's meaning is well-known and defined in the literature. *Manual of Patent Examining Procedure* § 608.01(v) (6th ed., 1995). Because the composition of Sil–42 perlite was not defined in the literature (it was a trade secret) or disclosed in the '267 specification, supplier/trade name information alone may not have satisfied the PTO's guidelines.

More fundamentally, even though Sil–42 perlite was sold commercially, the '267 specification does not disclose it and, at the time the '267 application was filed, no one in the art except Williams and USG knew that Sil-42 perlite should be used in a joint compound. Section 112 requires that the specification "set forth the best mode," if one exists at the time a patent application is filed, so that those having ordinary skill in the art may practice that best mode. Williams had to inform the public of his best mode of practicing the invention in order to obtain valid patent claims. He failed to do so.

■ USG further argues that those skilled in the art could have identified the nature of Williams' best mode embodiment by examining USG's commercial product. We reject this argument. USG cannot cure its failure to disclose the best mode of practicing the invention at the time the application was filed by later selling a commercial product embodying the invention. Compliance with § 112 cannot depend on whether a patentee later commercializes the invention. Moreover, those skilled in the art should not have to reverse-engineer USG's product; the '267 specification should have informed them of Williams' best mode of practicing the claimed invention.

■ Finally, USG argues that there can be no best mode violation absent an intent to conceal, and that Williams had no such intent. This argument is unpersuasive. Although it has been said that "[i]nvalidity for violation of the best mode requires intentional concealment of a better mode than was disclosed," *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1575, 24 USPQ2d 1401, 1415 (Fed.Cir.1992), the rule is not so limited.[7] *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 789–90, 35 USPQ2d 1255, 1258 (Fed.Cir.1995) (rejecting argument that intentional concealment is required for a best mode violation). A best mode violation may occur if the disclosure of the best mode is so

objectively inadequate as to *effectively* conceal the best mode from the public. *Transco Prods.*, 38 F.3d at 560, 32 USPQ2d at 1084 ("Even where there is a general reference to the best mode of practicing the claimed invention, the quality of the disclosure may be so poor as to effectively conceal it."); *Spectra–Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1535, 3 USPQ2d 1737, 1745 (Fed.Cir.) ("[O]nly evidence of 'concealment,' whether accidental or intentional, is considered."), *cert. denied*, 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987); *In re Sherwood*, 613 F.2d 809, 816, 204 USPQ 537, 544 (CCPA 1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1694, 68 L.Ed.2d 193 (1981).

■ The "concealment" language of our case law originated in *In re Gay*, 309 F.2d 769, 135 USPQ 311 (CCPA 1962). In *Gay*, the Court of Customs and Patent Appeals (CCPA) explained that "the sole purpose of [the best mode] requirement is to restrain inventors from applying for patents while at the same time concealing from the public preferred embodiments of their inventions which they have in fact conceived." *Id.* at 772, 135 USPQ at 315. Subsequently, the CCPA clarified that "only evidence of concealment (whether accidental or intentional) is to be considered. That evidence, in order to result in affirmance of a best mode rejection, must tend to show that the *quality* of an applicant's best mode disclosure is so poor as to effectively result in concealment." *In re Sherwood*, 613 F.2d 809, 816, 204 USPQ 537, 544 (CCPA 1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1694, 68 L.Ed.2d 193 (1981); *see also General Motors Corp. v. United States Int'l Trade Comm'n*, 687 F.2d 476, 483, 215 USPQ 484, 490 (CCPA 1982) (citing with approval *Sherwood*'s "effective concealment" principle). We consider *Sherwood* to be binding precedent, and that, by its reference to "accidental" concealment, it holds that failure to find intentional concealment does not preclude a finding that the best mode re-

---

7. We note that the quoted statement in *Brooktree* was dictum since the court concluded that there was substantial evidence that the best mode was disclosed. Additionally, in making the statement, the court cited *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1531, 20 USPQ2d 1300, 1302 (Fed.Cir.1991). In that case, too, the

inventors' intent with respect to concealment was not an issue because "[t]here was no evidence that the inventors believed at the time of filing their patent application that crimping was the preferred mode of carrying out the claimed invention." *Id.* at 1533, 20 USPQ2d at 1303–04.

quirement has been violated. We also note that the second inquiry concerning best mode compliance is an objective one, relating to whether the inventor effectively enabled his best mode of practicing the claimed invention. Inquiry into an intent to conceal, being subjective, is inconsistent with the objective nature of the second aspect of best mode compliance. It is not part of that analysis.[8]

Thus, the district court did not need to determine that Williams intentionally concealed his best mode of practicing the claimed invention. Rather, it was sufficient that the court held that there was no genuine dispute that the '267 specification did not adequately disclose Williams' best mode in a way that would allow those of ordinary skill in the art to practice it. The court determined that the best mode had been effectively concealed. This analysis was consistent with our precedent. *See Chemcast Corp.*, 913 F.2d at 926–30, 16 USPQ2d at 1035–39 (affirming finding of best mode violation because specification inadequately disclosed inventor's preferred material).

The district court held that when the evidence was viewed in the light most favorable to USG, as required on summary judgment, the evidence pointed in only one direction: Williams had a best mode of practicing the claimed invention, use of Sil–42 perlite, which was not adequately disclosed in the '267 specification. Having carefully reviewed the record and the parties' arguments, we fully agree with the court's conclusion. We therefore hold that the court did not err in determining that there was no genuine issue of material fact precluding summary judgment that all claims of the '267 patent are invalid.[9] *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 (summary judgment is appropriate when no reasonable jury could return a verdict for the nonmoving party).

---

**8.** In addition, we note that *intentional* concealment of a best mode *coupled with* disclosure of a false mode of practicing an invention may constitute inequitable conduct rendering a patent unenforceable. *Consolidated Aluminum Corp. v. Foseco Int'l. Ltd.*, 910 F.2d 804, 15 USPQ2d 1481 (Fed.Cir.1990).

**9.** The district court held that the '267 "patent" is invalid, which we interpret to mean that all the claims therein are invalid. Although "[e]ach

## CONCLUSION

The district court's grant of summary judgment of patent invalidity in favor of National is

### *AFFIRMED.*

claim must be considered individually for compliance with the best mode requirement," *Engel Indus.*, 946 F.2d at 1531, 20 USPQ2d at 1302, and it is unclear whether the district court conducted a claim-by-claim validity analysis, we find no error. Silicone-treated expanded perlite was an essential limitation of all the claims, which covered a single invention. Moreover, USG did not argue on appeal that the court erred in holding the "patent" invalid.